PROB 12C
(6/16)

Report Date: January 29 2024

# United States District Court

### for the

### Eastern District of Washington

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 30, 2024

SEAN F. McAVOY, CLERK

## Petition for Warrant or Summons for Offender Under Supervision

Name of Offender: Fernando Gonzalez     Case Number: 0980 1:14CR02012-SAB-1

Address of Offender: ▓▓▓▓▓▓▓▓ Grandview, Washington 98930

Name of Sentencing Judicial Officer: The Honorable Salvador Mendoza, Jr., U.S. District Judge
Name of Supervisory Judicial Officer: The Honorable Stanley A. Bastian, Chief U.S. District Judge

Date of Original Sentence: February 3, 2015

Original Offense:  Distribution of 50 Grams or More of a Mixture Containing Methamphetamine, 21 U.S.C. § 841(a)(1)

Original Sentence:  Prison - 120 months          Type of Supervision: Supervised Release
                    TSR - 48 months

Asst. U.S. Attorney:  Richard Barker            Date Supervision Commenced: August 11, 2021

Defense Attorney:  Ben Hernandez                Date Supervision Expires: August 10, 2025

---

### PETITIONING THE COURT

To issue a summons.

The probation officer believes that the offender has violated the following conditions of supervision:

Violation Number     Nature of Noncompliance

   1                **Mandatory Condition #2**: The defendant shall not commit another federal, state or local crime.

                    **Supporting Evidence**: Mr. Gonzalez is considered to be in violation of his supervised release conditions by being arrested for driving under the influence of alcohol on January 19, 2024.

                    Per the Washington State Patrol report of investigation, case number 24-001048, dated January 19, 2024, Trooper Matthew Heck, was on normal patrol in Yakima County and Benton County from 15:00 to 01:00 hours. He was operating an officially unmarked patrol vehicle which is a blue 2023 Ford Explorer Police Interceptor (879WSP), equipped with emergency lights and siren.

                    Utilizing his vehicle's rear mounted Bill Radar, S/N R-2606 in the same lane, stationary, approaching mode; he observed the defendant's vehicle's speed to be 88 miles per hour (mph) in the posted 70 mph zone. As the vehicle continued to approach the trooper's location, the vehicle's speed started to slow. After the vehicle drove passed him, the trooper attempted to catch up to the vehicle to initiate a traffic stop.

While the trooper was overtaking the vehicle, he observed the vehicle cross the center skip line by approximately one tire width. The vehicle then signaled taking the westbound I-82 exit 80. As the vehicle was exiting, the trooper initiated a traffic stop. The driver continued driving on the off ramp without pulling to the shoulder, so the trooper placed his vehicle's spotlight on the defendant's vehicle. The driver finally slowed and came to a stop on the shoulder.

The trooper contacted the defendant's vehicle on the passenger side. Upon contacting the vehicle, he observed a highly intoxicated female in the right rear passenger seat, and the defendant, who was later identified by his Washington State driver's license as Gonzalez, Fernando (date of birth 10/28/1986). The trooper notified the defendant of the reason for the stop advising it was for his speed of 88 mph in the posted 70 mph zone. The defendant stated he did not think he was going that fast. The defendant provided him with his driver's license. The trooper asked him if he had his insurance, he stated that he had SR 22. The trooper advised the defendant he needed to see it, and after fumbling through some papers, the defendant said it was in his other car.

While the trooper was waiting for the rest of the paperwork, the female in the back seat started to get sick and vomited. The defendant stated he went to pick her up to drive her home. While the trooper was talking to the defendant, he could smell the overwhelming odor of intoxicants coming from inside the vehicle. The defendant would not look at the trooper as he was talking to him. His movements were slow and lethargic inside the vehicle. The trooper asked the defendant how much alcohol he had to drink that night, and the defendant stated he did not have anything to drink that night.

The trooper returned to his patrol car to get his preliminary breath tester (PBT). After getting his PBT, the trooper re-contacted the defendant on the driver's side. He asked the defendant to step out of his vehicle and meet him at the front of his car. After exiting, the defendant started walking to the back of his car. The trooper again asked the defendant to meet him at the front of his vehicle. The trooper asked him again if he had anything to drink that night, and he said "no."

Once they were at the front of his vehicle, the trooper asked the defendant if he was willing to provide voluntary field sobriety tests (SFST) , to make sure that he was okay to drive, and he said that he would. The area where he conducted the voluntary SFST's was paved, a slight grade shoulder. The defendant wore glasses. The trooper asked him if he had any physical impairment that might keep him from doing the tests, and he said he did not. The area was lit by streetlights, headlights, emergency lights, and the trooper's flashlight.

The first test the trooper conducted was the Horizontal Gaze Nystagmus . For this test, the trooper observed 6 out of 6 clues. He did not observe Vertical Gaze Nystagmus. The second test the trooper conducted was the Walk and Turn. For this test, he observed 5 out of 8 clues. The third test the trooper conducted was the One Leg Stand. For this test, he observed 3 out of 4 clues. The trooper asked the defendant if he was willing to provide a voluntary PBT sample, and he said that he would. The defendant provided a voluntary PBT sample of 0.142.

The trooper placed the defendant under arrest for driving under the influence (DUI). He placed the defendant in handcuffs, which were checked for proper spacing, and double locked, according to department policy. He searched the defendant incident to arrest, with

negative results. He placed the defendant in the back seat of his patrol vehicle. He read the defendant his Constitutional Rights from his department issued Constitutional Rights card. The defendant stated he understood his rights. The trooper read the defendant his Citizenship Notification from his department issued Citizenship Notification card. The defendant's brother was called to come pick up the vehicle and the female passenger.

The trooper transported the defendant to the Prosser Police Department for DUI processing. They arrived at the police station and started the 15-minute observation period with a mouth check. No foreign substances were located. The trooper read the defendant his Constitutional Rights from the Washington State DUI arrest report. The defendant again stated he understood his rights. The trooper read the defendant the Implied Consent Warning for Breath from the Washington State DUI arrest report.

While they were waiting for the 15-minute observation period to end, the defendant continuously offered to pay the trooper money in order to let him go. The defendant first started by offering $20,000. The trooper advised him he was not going to be bribed. The defendant continued to mumble under his breath what he would be able to buy with all the money for 1 night of work, stating the trooper could buy a Camaro, then naming several other cars, and finishing with a Corvette. The defendant continued offering more money, until he reached $50,000. The trooper reminded the defendant he could not be bought and would not be accepting any bribes.

The defendant attempted to give his first breath sample, but after multiple attempts of providing very short samples, the defendant received an incomplete read for his sample. He restarted the test, and the defendant gave his first breath sample. After providing the first breath sample, the machine indicated "Interference detected." After moving the breath tube, the trooper attempted the test again, and again received an "Interference detected."

The defendant stated he had to use the bathroom, the trooper allowed him to use the bathroom. After returning from the bathroom, the trooper conducted a second mouth check, and again, no foreign substances were located. The trooper opened a door to attempt to help with air flow. After the 15-minute observation period, the defendant provided his first breath sample, and for a third time, received an "Interference detected."

Due to the multiple "Interference detected" errors, the trooper decided to transport the defendant to the Grandview Police Department (GPD) for the DUI processing. They arrived at GPD and the defendant stated he wanted to talk to his attorney. The defendant stated he did not know his number but provided his name. The trooper searched for the attorney that he requested, and attempted to call him, but there was no answer. The trooper asked the defendant if he would like him to call a public defender, and he said he would. The trooper contacted attorney Kip Kendrick. While the defendant was on the phone with the attorney, the trooper stepped out of the room. Upon completion of the phone call, the trooper started the 15-minute observation period with another mouth check. Again, no foreign substances were located.

After completion of the 15-minute observation period, the defendant provided his first breath sample with an infrared spectroscopy (IR) result of 0.128 and an electrochemical cell (EC) result of 0.131. The defendant provided his second breath sample with an IR result of 0.118 and an EC result of 0.120.

Prob12C
Re: Gonzalez, Fernando
January 29, 2024
Page 4

The trooper provided the defendant with his copy of the driver's hearing request information from the Washington State DUI arrest report. The trooper then transported the defendant to the Benton County Jail, where he was booked for DUI. This ended the trooper's contact with the defendant.

Due to the defendant offering to pay the trooper between $20,000 and $50,000 to let him go and not process the DUI, the trooper requested that possible charges of bribery be added to this case.

On January 22, 2024, Mr. Gonzalez was arraigned on DUI charge and pretrial hearing set for February 22, 2024. Mr. Gonzalez was released on personal recognizance.

| | |
|---|---|
| 2 | **Special Condition #17**: You must not enter into or remain in any establishment where alcohol is the primary item of sale. You must abstain from alcohol and must submit to urinalysis and Breathalyzer testing as directed by the supervising officer, but no more than 6 tests per month, in order to confirm continued abstinence from this substance. |

**Supporting Evidence**: Mr. Gonzalez is considered to be in violation of his supervised release conditions by consuming alcohol on or about January 19, 2023.

Please refer to the supporting evidence in violation #1 for details.

The U.S. Probation Office respectfully recommends the Court issue a summons requiring the defendant to appear to answer to the allegations contained in this petition.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:    January 29, 2024

s/Arturo Santana

Arturo Santana
U.S. Probation Officer

---

THE COURT ORDERS

[ ]   No Action
[ ]   The Issuance of a Warrant
[X]   The Issuance of a Summons
[ ]   Other

Signature of Judicial Officer

1/29/2024
Date